**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MAJOR J. MONROE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 04-4007-JPG |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

This matter comes before the Court on Petitioner Major Monroe's amended 28 U.S.C. § 2255 motion to vacate, set aside or correct sentence (Doc. 41), to which the government has responded. (Docs. 9, 43). Monroe has also filed his second motion for leave to amend his § 2255. For the following reasons, Petitioner's motions are **DENIED**.

On October 17, 2002, Monroe entered an open plea of guilty to a one-count indictment charging him with knowingly and intentionally distributing "crack cocaine" in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C) (Doc. 32, 02-40002-JPG). Prior to his change of plea, the government filed an enhancement pursuant to 21 U.S.C. § 851 based upon Monroe's prior felony drug conviction (Doc. 27, 02-40002-JPG). After he entered his plea, the United States Probation Office prepared a Presentence Report (PSR) setting forth Monroe's relevant conduct, which consisted of approximately 1,000 grams of powder cocaine, 755.15 grams of crack cocaine and just over 5 grams of marijuana (Doc. 41, 02-40002-JPG, ¶ 16). Monroe's relevant conduct rendered a base level offense of 36; he received a two-level reduction for acceptance of responsibility, making his total offense level 34. *Id*. at ¶ 30. On January 15, 2003, this Court sentenced Monroe to 292 months'

imprisonment (262 months on his conviction and a consecutive 30 month term for the revocation of his supervised release), 6 years' supervised release, a $50 fine and a $100 special assessment (Doc. 39, 02-40002-JPG).  The government filed a Rule 35 motion on January 13, 2004, which was withdrawn after Monroe commenced the present action (Doc. 48, 02-40002-JPG).

Monroe did not appeal his conviction.  In his § 2255 motion, Monroe claims he did not appeal because his lawyer failed to file an appeal like he asked.  If taken as true, such an omission constitutes a per se violation of the Sixth Amendment.  *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994).  The Court held an evidentiary hearing on this matter and determined that Monroe failed to effectively request his attorney to file a notice of appeal (Doc. 39).  At the hearing, the Court found the testimony of Monroe's lawyer credible and rejected Monroe's argument to the contrary.  This claim need not be addressed again here.  Monroe's motion contains an additional 10 claims, all falling under the rubric ineffective assistance of counsel.  The Court will address these arguments in turn.

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255.  However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).  Relief under § 2255 is available only if an error is " jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (internal citations and quotations omitted).  It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

In order to succeed on his claims, Monroe must establish that his attorney's performance "fell below an objective level of reasonableness" and that his error(s) prejudiced the outcome of the proceedings. *United States v. Allender*, 62 F.3d 909, 913 (7th Cir. 1995) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In these cases, courts defer to counsels' decisions and presume they acted reasonably. *United States v. Williams*, 106 F.3d 1362, 1367 (7th Cir. 1997). On the issue of the attorney's performance, the Court considers the reasonableness of counsel's actions "in the context of the case as a whole, viewed at the time of the conduct, and there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (internal citations and quotations omitted). With regard to the prejudice aspect of the ineffective assistance standard, the defendant must show with a "reasonable probability" that without counsel's error the result of the proceeding would have been different and that the error made the proceeding unfair or unreliable. *Id.* at 699. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Emezuo v. United States*, 357 F.3d 703, 708 (7th Cir. 2004) (quoting *Strickland*, 466 U.S. at 694)).

Monroe's second claim is unclear. The foundation for this and his third claim is an alleged promise by the government that it would not file a § 851 enhancement if he pleaded guilty. Monroe seems to claim his attorney was ineffective for advising him that the § 851 enhancement would not be used against him. The government filed the enhancement for Monroe's prior convictions on October 7, 2002 (Doc. 27, 02-40002-JPG), and Monroe changed his plea on October 17, 2002 (Doc. 33, 02-40002-JPG). In his affidavit, Monroe admits that before he pleaded guilty his attorney told him the government had filed an enhancement and that the enhancement would increase his statutory maximum to 30 years' imprisonment (Doc. 15, at 6). At the change of plea hearing the Court asked

Monroe whether he understood that "because of the 851 enhancement, the maximum penalty is up to 30 years' imprisonment." (Chg. Pl. Hrng., at 4). In response, Monroe answered yes. When asked if he had any questions regarding the possible penalties for his offense he said he did not. When asked whether he understood what the Court had said he answered yes. These statements substantially undermine Monroe's claims and "constitute a formidable barrier" in this action. *Key v. United States*, 806 F.2d 133, 136 (7th Cir. 1986). In this colloquy the Court covered the existence of the enhancement and its effect. In light of Monroe's answers to these questions, it is difficult to see how his attorney's statement (assuming he made it) rendered the proceeding unfair or unreliable. Before accepting his plea the Court covered these issues. Any misunderstandings attributable to Monroe's attorney should have been taken care of by this colloquy. As such, the Court finds that Monroe has failed to establish the requisite prejudice. *See Barker v. United States*, 7 F.3d 629, 633-34 (7th Cir. 1993).

In his second claim Monroe also asserts that when he "plead guilty the prosecutor used the enhancement against [him] and [his] lawyer did not properly object to the enhancement, nor did he state on the record" the alleged agreement not to file the enhancement. This argument apparently overlaps with his third claim, which reads as follows: "When my attorney did not object to the enhancement he advised me that I should not worry because he was only letting the Judge know that it was just in his files, because if he did not let the Judge know and I decided to appeal, it would overturn my case." This seems to be another claim that his attorney should have objected to the § 851 enhancement. These arguments are unpersuasive. At his plea hearing the Court asked Monroe whether any promises were made in an effort to induce him to plead guilty. Monroe said no. The Court also asked the prosecutor whether the government made any oral agreement with Monroe.

After the prosecutor said that no such agreement existed, he indicated that the government intended to file a Rule 35 in the case. When asked whether this was true, Monroe said that it was. These questions specifically covered the very claims Monroe raises here. The government allegedly made this promise before his change of plea, yet at that hearing Monroe stated for the record that no such promise had been made. In essence, Monroe is claiming that he perjured himself when he told the Court that no promises had been made to induce him to plead guilty. If his attorney would have stated that such an agreement was made he would have directly contradicted his client's own statement. The Court finds no reason to give Monroe another opportunity to say that such an agreement was made, when Monroe has already had an opportunity to make this claim under oath – at his plea hearing – where he swore that no such promise was made. *See United States v. Stewart*, 198 F.3d 984, 986-87 (7th Cir. 1999). Even if his attorney's failure to object and to put the statement on the record were objectively unreasonable, Monroe cannot show the required prejudice. The fact that Monroe was told of the 851, its consequences, and swore that the government had made no agreements removes the prejudice from any misinformation his attorney may have given him. *See Barker*, 7 F.3d at 633-34. Beyond this, Monroe has not shown any grounds for such an objection (aside from that raised in his claims discussed *infra*). The basis of the § 851 enhancement was a drug conviction in this very Court. *See United States v. Monroe*, Criminal No. 97-CR-40043-JPG. Monroe's allegation of a promise, without documentation or a statement in the record, is insufficient to justify an evidentiary hearing into this matter. *See Bischel v. United States*, 32 F.3d 259, 264-65 (7th Cir. 1994). This claim is frivolous.

In claim four, Monroe argues his attorney should have objected to the PSR; "specifically . . . the enhancements and the relevant conduct issues." The Court will deal with Monroe's

objections based on *Apprendi* and his 1998 conviction *infra*. Monroe does not specify upon what else claim four relies. One might assume he takes objection to the calculation of his criminal history category. Of course this objection, and an objection to the relevant conduct calculation, would contradict his testimony at his sentencing where he said he had no objections to either of these two calculations. (Sent. Tr., at 9). The record simply contains no evidence to support Monroe's claims on the grounds asserted in claim four. His conclusory allegations of ineffectiveness are insufficient to show how his attorney's failure to object prejudiced the outcome of the proceedings. *See United States v. Asubonteng*, 895 F.2d 424, 429 (7th Cir. 1990). Monroe has failed to produce any information to show that any objection would have been meritorious or that any objection had even the potential to affect the outcome. Claim four is simply frivolous.

In his fifth claim, Monroe argues his counsel was ineffective for advising him not to object to certain portions of the PSR. Monroe says his attorney advised him (and his grandmother, in an effort to lobby Monroe) not to object so that he would receive a sentence from 151 to 188 months. Monroe's PSR clearly stated that the guideline range for his crime was imprisonment for 262 to 327 months. At sentencing, Monroe said that he read the PSR "very thoroughly." (Sent. Hrg., at 8). It is only reasonable to assume a defendant's review of a PSR would include, if not focus on, the guideline range for his crime. Though Monroe thought there were errors in the PSR, he did not believe the PSR contained errors affecting his guideline range (Sent. Hrg., at 9). Thus, it is difficult to credit his assertion that his attorney advised him that his sentencing range was to be between 151 and 188 months' imprisonment. Further, if his attorney did leave him with that impression, it should have been cured by his thorough reading of the PSR. As to the required prejudice, Monroe does not present any information to lead the Court to conclude that any objection by counsel would have been

anything other than frivolous – obviously the kind of objection his attorney had no duty to make. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005). As hinted above, Monroe has not presented any facts or argument as to why this failure to object had any effect on his eventual sentence. Upon review of the record and the numerous claims Monroe has made in this motion, the Court does not see how such an objection would have made any difference in his sentencing.

As his sixth claim, Monroe claims his attorney was ineffective for advising him not to withdraw his guilty plea. Monroe claims he wanted to withdraw his guilty plea after he found out about his § 851 sentencing enhancement. According to Monroe, counsel was ineffective for advising him that withdrawing his plea of guilty would result in a charge of perjury. Monroe apparently contends that but for this advice he would have withdrawn his guilty plea. It is difficult to say that counsel erred by giving this advice. Certainly, the withdrawal of a guilty plea after acceptance can open up the possibility of a perjury charge. *See, e.g., Stewart*, 198 F.3d at 986-87. Given Monroe's arguments in his § 2255 motion he would no doubt cite the government's alleged agreement on the § 851 enhancement as his basis for the claim. Again, in light of the answers he gave in the Rule 11 colloquy, his attorney's advice was not objectively unreasonable.

In any event, the Court finds that Monroe has not demonstrated that any prejudice resulted from his attorney's advice. Monroe knew of the sentencing enhancement before the change of plea hearing and said he understood the consequences of the enhancement at the hearing itself. Because this Court had already accepted his guilty plea, Monroe could only have withdrawn his plea for "a fair and just reason." Fed.R.Crim.P. 11(d)(2)(B). Monroe asserts that he would have withdrawn his plea if he had known about the enhancement. On its face, this argument is illogical considering he acknowledged the existence of the enhancement at his change of plea hearing. If Monroe were

to claim that the government had made an oral promise not to file the enhancement as his grounds for withdrawal, it would directly contradict the testimony he gave at the change of plea hearing. That a defendant later claims his statements made under oath at a hearing were untrue is not a "fair and just reason" to allow a defendant to withdraw a plea of guilty. *Stewart*, 198 F.3d at 987. A judge is free to treat statements freely given at a Rule 11 hearing as conclusive. *See id.* Monroe does not claim his statements were coerced; he claims he was unhappy at receiving the sentencing enhancement. In *Stewart*, a similar rationale was rejected as an insufficient reason to allow a withdrawal. *Id.* Thus, the likelihood of Monroe demonstrating a "fair and just reason" for his withdrawal was quite small, and an acceptance of a withdrawal under the circumstances was unlikely. Monroe has failed to meet the prejudice aspect of the *Strickland* test. This claim is frivolous.

In his seventh, eighth, ninth and tenth claims, Monroe argues his trial counsel was ineffective for failing to object to certain paragraphs of the PSR relating to his 1998 conviction for possession of cocaine and cocaine base with intent to distribute. In these claims, Monroe argues his attorney should have objected to paragraphs 41, 46, 47 and 48, respectively. His attorney's failure to object to these paragraphs, argues Monroe, resulted in an improper three-point assessment for his criminal history because these two convictions were related. In 1998, Monroe was sentenced to 84 months; he was granted supervised release in October, 2001. After his release, Monroe began dealing drugs again almost immediately and was indicted. That indictment led to the conviction Monroe now attacks. According to Monroe, these two convictions were based on the same criminal activity. He "had the intent to distribute in 1997, but didn't get it done until 2001." (Doc. 41, p. 2). The foundation for his same criminal activity argument is easily summarized: he stashed the proceeds

of his drug business before his incarceration in 1998 and once released, he used the identical funds to finance his drug activity. Thus, under U.S.S.G. § 4A1.2(a)(2), he claims the two convictions should not have been considered separately.

These two convictions were not related for purposes of Monroe's criminal history calculation and were properly considered separately. As the Seventh Circuit has recognized, prior sentences are not related for purposes of § 4A1.2(a)(2) "if they were for offenses that were separated by an intervening arrest . . . [that is, where] the defendant is arrested for the first offense prior to committing the second." *United States v. Morgan*, 354 F.3d 621, 623 (7th Cir. 2003) (quoting § 4A1.2, Application Note 3). The two offenses at issue here were separated not only by Monroe's arrest, but by the over three years he spent in prison. His claim that they are related for purposes of § 4A1.2(a)(2) is simply wrong. His attorney's failure to object cannot be called objectively unreasonable and prejudicial to the outcome of the proceedings, for any objection based upon the grounds stated in these claims would most certainly have been frivolous.

In his final claim, Monroe argues his attorney should have objected to his relevant conduct in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Basically, *Apprendi* held that any fact that increases a defendant's penalty beyond the statutory maximum for an offense must be proven to the jury beyond a reasonable doubt. *United States v. Williams*, 410 F.3d 397, 401 (7th Cir. 2005) (citing *Apprendi*, 530 U.S. at 466). Excepted from this holding is the fact of a prior conviction, which may be determined by the judge and need not be proven to a jury beyond a reasonable doubt. *Williams*, 410 F.3d at 401-02. After *Apprendi*, "under the sentencing guidelines, district courts may still determine a drug offender's base level offense by calculating quantities of drugs that were not specified in the count of conviction but that the court concludes, by a preponderance of the evidence,

were a part of the defendant's relevant conduct, as long as that determination does not result in the imposition of a sentence that exceeds the statutory maximum penalty for that crime." *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002) (citing *United States v. Jones*, 245 F.3d 645, 651 (7th Cir. 2001)).

Monroe claims the maximum penalty for his crime was 20 years, and thus his sentence greater than that term violated *Apprendi*. Monroe's argument mischaracterizes this case. As a result of the § 851 enhancement, Monroe faced a statutory maximum of 30 years' imprisonment, not 20. 28 U.S.C § 841(b)(1)(C). Monroe was sentenced to a term well under that maximum – 292 months. *Apprendi* has no application here, and his arguments thereunder are frivolous. *See United States v. Jones*, 245 F.3d 645, 649 (7th Cir. 2001).

Recently, Monroe filed a motion for leave to amend his § 2255 for the second time (Doc. 48). In accordance with the electronic filing procedures in place in this district, Monroe emailed the Court a copy of the amendment he would like to file. In his proposed amendment, Monroe claims the government provided a disingenuous reason for withdrawing its Rule 35 motion. He contends the government mislead the court regarding its decision to withdraw the Rule 35, and that in any event, he was denied due process by not having counsel represent him regarding the government's motion to withdraw. The Court has reviewed Monroe's proposed amendment and finds that the amendment is barred by the limitations period in § 2255. *See Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002).

Amendments to motions for relief under § 2255 are governed by Federal Rule of Civil Procedure 15. *Johnson v. United States*, 196 F.3d 802, 805 (7th Cir. 1999). Monroe has filed for leave to amend outside the limitations period provided in § 2255. That section contains a one-year

limitations period which runs from the latest of the happening of four events.  Monroe apparently argues that an amendment in this case is appropriate under the fourth event, which provides that the period shall run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255 ¶ 6(4).  He claims that he should be granted leave to amend his motion "to raise important issues [he] could not have raised without an attorney, and were not made known to his attorney until November 14, 2004." Assuming for purposes of this discussion that the date in the previous sentence should have been November 14, 2005, Monroe has still failed to make the necessary showing under that section. That Monroe may have been unaware of the legal significance of his lack of representation on the motion to withdraw the Rule 35 is immaterial.  *See Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). Similarly, it is of no consequence that his current attorney only found out about the facts giving rise to the proposed amendment recently.  The limitations period began to run well over a year ago when the judgment on his conviction became final. Thus, unless his amendment relates back to his original motion, it is time-barred.

      Federal Rule of Civil Procedure 15(c) provides that an amendment relates back to the date of the original pleading when "the claim . . . arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  The standard for amendment of § 2255 motions is more stringent.  Under § 2255, a claim will not relate back "unless the claim has more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings."  *Rodriguez,* 286 F.3d at 981(internal citations and quotation omitted).  For the "untimely claim to relate back, it must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type."  *Id.* (internal

-11-

citations and quotations omitted). Untimely amendments should be denied when they would "add a new claim or theory of relief." *Id*. Under this standard, Monroe's new claim clearly would not relate back to his original motion. Monroe's claims in his original motion (as amended) are all based upon ineffective assistance of counsel at his change of plea hearing and at sentencing. His proposed amendment raises a completely different claim, one for a violation of his due process rights, at a different stage of the proceedings. Monroe's motion for leave to amend is **DENIED**.

## CONCLUSION

Monroe's 28 U.S.C. §2255 motion to vacate, correct or set aside sentence (Doc. 41) is **DENIED**. Monroe's motion for leave to amend (Doc. 48) is also **DENIED**. Because Monroe fails to make a substantial showing of the denial of a constitutional right, any request for a certificate of appealability is **DENIED**. See 28 U.S.C. §2253(c)(2). After reviewing the motions, records and files in this case, the Court believes that an evidentiary hearing is unnecessary. Therefore, the hearing set for December 2, 2005, will be **STRICKEN**.

**IT IS SO ORDERED.**

**Dated: November 28, 2005.**

                                                    /s/ J. Phil Gilbert
                                                    **J. PHIL GILBERT**
                                                    **U.S. District Judge**